[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14345

_____

D.C. Docket No. 5:16-cv-00158-TES

JAMES W. BEARDEN,

Plaintiff-Appellant,

versus

E.I. DU PONT DE NEMOURS AND COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(December 30, 2019)

Before WILLIAM PRYOR, MARTIN, and SUTTON,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Jeffrey S. Sutton, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This appeal requires us to interpret the word "retirement" in the Award Terms of stock options granted to James Bearden by his former employer E.I. du Pont de Nemours and Company. Under the terms of the award, an employee who leaves the company "due to retirement" keeps the original expiration date of his stock options. But an employee who leaves for other reasons must exercise his stock options by his last day of employment. The parties disagree about whether "retirement" requires an employee *both* to reach a certain age *and* to be employed a certain number of years. Although Bearden satisfied the age requirement, he had not yet satisfied the years-of-service requirement. After concluding that an employee is eligible for retirement within the meaning of the Award Terms only upon satisfying both criteria, the district court granted summary judgment to DuPont. We affirm.

## I. BACKGROUND

We divide our background discussion in three parts. First, we review the facts that led to this dispute. Second, we review the terms of Bearden's stock option awards. Third, we review the procedural history of this appeal.

### A. Bearden Works for DuPont, DuPont Grants Him Stock Options, and Bearden Exits the Workforce.

From 1980 to 2004, Bearden was an employee of either Griffin Corporation or a joint venture of Griffin and DuPont. Bearden officially became an employee of DuPont in January 2005 after DuPont acquired all of Griffin's interest in the

2

joint venture. Bearden lived and worked during this time in Georgia, although DuPont is incorporated and headquartered in Delaware.

While Bearden worked for it, DuPont granted him several stock options, including for the years 2009, 2010, and 2011. Bearden left the workforce at the age of 67 after working for DuPont for a little over 10 years. By the end of his last day of employment, Bearden had not exercised any of these stock options. When he later checked on these options, he learned that the options had expired. After Bearden asked DuPont for an explanation, DuPont reviewed the matter. It explained to Bearden that the expiration date of the stock options accelerates when an employee leaves and does not qualify for retirement, as that word is defined by the Award Terms. Because Bearden left without exercising his stock options and did not qualify for retirement, his stock options expired on his last day of employment.

### B. The Terms of Bearden's Stock Option Awards.

Adopted by DuPont's shareholders, the Equity and Incentive Plan was designed to "attract, motivate[,] and retain" certain officers, employees, independent contractors, and nonemployee directors of DuPont. It was created to allow for "performance-based compensation" through the "grant[ing of] stock options . . . and other stock-based awards." Per the "Governing Law" provision, "[t]he Plan and all determinations made and actions taken pursuant hereto shall be

governed by the laws of the State of Delaware without giving effect to the conflict of laws principles thereof."

The Equity and Incentive Plan is "administered by the [Compensation] Committee." It provides the Compensation Committee broad discretion in administering the plan, including the powers to determine when and how an award might be conferred or canceled, "to construe and interpret" any award, to "correct any defect" in any award, to "supply any omission" in any award, and to "reconcile any inconsistency" in any award. All "decision[s] of the [Compensation] Committee as to all questions of interpretation and application of the Plan shall be final, binding and conclusive on all persons." An award is "evidenc[ed]" by a set of "Award Terms," which is defined as a "written agreement, contract, or other instrument or document."

The Award Terms evidencing the 2009 to 2011 stock option awards explain that Bearden "ha[s] been granted stock options under the E.I. du Pont de Nemours and Company Equity and Incentive Plan . . . , subject to the following Award Terms" and "the terms of the [Equity and Incentive] Plan itself, which is hereby incorporated by reference." Each set of Award Terms fixes the expiration date for the stock options as "no later than" seven years after issuance but cautions: "[T]he option[s] may expire sooner. Please refer to 'Termination of Employment' below."

4

The "Termination of Employment" section explains that an employee who leaves the company before exercising the options might trigger an earlier expiration date depending on how and when the employee departs the company. It then describes four different kinds of termination scenarios: (1) Retirement, (2) "Lack of Work, Divestiture to Entity Less than 50% owned by DuPont, or Total and Permanent Disability," (3) Death, or (4) "Any Other Reason (such as voluntary termination)." A retiring employee keeps the original seven-year expiration date. But an employee who leaves DuPont for "Any Other Reason" must exercise his options "by the date on which [he] terminate[s] employment." The Award Terms explains that "Retirement" is "defined in the applicable pension or retirement plan or . . . company policy."

The "Pension and Retirement Plan" does not provide a single definition of the term "retirement," but Section IV, labeled "Pensions for Retired Employees," outlines four kinds of retirement, each with its own eligibility requirements and payment amounts:

(1) "Normal retirement": Age 65 and 15 years of service.

(2) "Early Retirement": Age 50–64 and 15 years of service.

(3) "Incapability Retirement": 15 years of service and a determination by the Company that the employee is permanently incapable of performing his duties.

(4) "Optional Retirement": *Either* age 50, 15 years of service, and otherwise involuntarily terminable *or* age 45–49, 25 years of service, and otherwise involuntarily terminable.

5

"[T]erminated employee[s]" who leave the company "for any reason other than retirement under the provisions of Section IV" and who are age 65 or have provided at least five years of service are entitled to receive a deferred pension under Section V of the Pension Plan, labeled "Vested Right to Deferred Pension." It is undisputed on appeal that Bearden's employment with Griffin and the joint venture does not count toward his years of service for purposes of administering the Pension Plan.

In summary, DuPont's Equity and Incentive Plan allows the Compensation Committee to grant performance-based compensation in the form of stock option awards. It affords the Committee complete discretion to interpret the terms of any stock option award and selects Delaware law to govern the plan. The Award Terms, the contract evidencing a stock option award, fixes the expiration date of an award. Ordinarily, an employee has seven years from the time of the award to exercise his stock options. But the expiration date might accelerate if an employee leaves DuPont for a reason other than "retirement," as defined by reference to the Pension Plan. And the Pension Plan describes four different kinds of retirement, with each requiring either 15 or 25 years of service with DuPont.

## C. *Bearden Sues and the District Court Grants DuPont Summary Judgment.*

After receiving DuPont's explanation that his stock options expired on the last day of his employment because he had not retired within the meaning of the

6

Award Terms, Bearden sued to reinstate the stock options. He alleged a breach of contract and a breach of the duty of good faith and fair dealing. Bearden argued that the Pension Plan contained no express definition of "retirement," so the word carried its ordinary meaning. Citing a dictionary that defines "retirement" as a person exiting the workforce upon reaching a certain age, Bearden argued that the ordinary meaning of the word requires no length of service. Because Bearden exited the workforce at age 65, he contended that he "retired" within the ordinary meaning of the word. DuPont disagreed and argued that the Pension Plan defines retirement under Section IV. And DuPont argued that all four definitions require that an employee work for DuPont for a minimum of fifteen years, but Bearden worked for DuPont for only ten years.

Both parties moved for summary judgment. DuPont appended to its motion a declaration of Mary Dineen, the former Manager of Global Benefits Strategy at DuPont for 10 years. Dineen declared that "DuPont, through the Compensation Committee, has consistently interpreted the phrase 'Due to Retirement' under the 2009–2011 Award Terms to refer to retirement under Section IV of the DuPont Pension and Retirement Plan."

Bearden both moved to strike the declaration and filed objections to the declaration. He argued that DuPont never mentioned any decision by the Compensation Committee during discovery. And he asserted that, in its initial

disclosures, DuPont did not designate anyone on the Compensation Committee as a witness with relevant knowledge. Instead, DuPont first mentioned a decision by the Compensation Committee when it submitted the Dineen declaration in support of its motion for summary judgment. Bearden also objected that Dineen lacked personal knowledge of a decision by the Compensation Committee because she was not a member of the Committee and did not explain how she knew the Compensation Committee made a decision.

The district court denied the motion to strike because DuPont had identified Dineen in its initial disclosures as a person who was involved in the investigation of the cancelation of Bearden's options. And other DuPont employees stressed during their depositions that Dineen was consulted on the cancelation because she was "the subject matter expert" on the Pension Plan. The district court found no inconsistencies between Dineen's declaration and any previous discovery responses. "Instead, her statements were mere clarifications" necessary "to understand the issues." The district court also observed that Bearden neither attempted to depose Dineen after DuPont submitted the declaration nor requested that the district court delay ruling to allow him to explore the veracity of her declaration.

The district court granted summary judgment to DuPont. In doing so, it deferred to the Compensation Committee's interpretation as explained by Dineen

8

and evaluated whether that decision was reasonable and taken in good faith. The district court ruled that DuPont acted in good faith because the evidence established that DuPont consistently interpreted the Award Terms to refer to Section IV of the Pension Plan. It explained that Bearden presented no evidence to contradict that DuPont uniformly applied this interpretation or that the Compensation Committee acted in bad faith. The district court also rejected the ordinary definition of retirement because the Award Terms states that "retirement" has a specific meaning, that which is defined in the Pension Plan.

## II. STANDARD OF REVIEW

We review *de novo* a grant of summary judgment, and we view the evidence and all factual inferences in the light most favorable to the nonmoving party. *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018). Summary judgment is appropriate where no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Before construing the term "retirement" in this diversity action, we must decide which state law governs our analysis. Although Bearden contends that Georgia law governs this dispute because he and DuPont executed the stock option awards in Georgia, the Equity and Incentive Plan contains a choice-of-law provision that selects Delaware law. Georgia law ordinarily honors choice-of-law

9

provisions, and Bearden offers no evidence that Delaware law is "contrary to Georgia public policy" or that Delaware bears "no substantial relationship to the parties or the transaction." *Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). So we will respect the parties' choice of law. And neither party contends that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, governs this appeal.

Delaware follows "the objective theory of contracts." *Salamone v. Gorman*, 106 A.3d 354, 367 (Del. 2014) (internal quotation marks omitted). Under that theory, "a contract's construction should be that which would be understood by an objective, reasonable third party." *Id.* at 367–68 (internal quotation marks omitted). Although Delaware courts ordinarily "give words their ordinary meaning" "[w]hen construing a contract," they do so only if the parties express no "contrary intent." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992); *see also AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) ("[W]hen interpreting a contract, . . . we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended." (internal quotation marks omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 36, at 225 (2012) ("Definition sections and interpretation clauses are to be carefully followed."). A contract is ambiguous only "when the provisions in controversy are fairly susceptible of different interpretations or may have two or

more different meanings." *Salamone*, 106 A.3d at 369 (alteration adopted) (internal quotation marks omitted). "Contractual language is not rendered ambiguous simply because the parties in litigation differ concerning its meaning." *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 820 (Del. 2018) (internal quotation marks omitted).

The Award Terms ties the "Retirement" provision to the Pension Plan: "Due to Retirement (*as defined in the applicable pension or retirement plan* or . . . company policy)." Although the Pension Plan does not use the magic words "retirement is defined as . . . ," it nevertheless provides the eligibility requirements for four different kinds of retirement, and states that other nonqualifying "[t]erminated employee[s]" who are age 65 or have five years of service are governed under a different section of the Pension Plan. A "reasonable third party" would understand that the four kinds of eligibility requirements define the terms of "retirement" in the Pension Plan and that the Award Terms referenced those terms of retirement. *See Salamone*, 106 A.3d at 367–68; *see also* Scalia & Garner, *Reading Law* § 36, at 225, 227 ("Drafters often specify the meaning of the terms they use. . . . Ordinarily, judges apply text-specific definitions with rigor."). Reading the text as a whole, we conclude that "retirement" as used in the Award Terms and Pension Plan includes both age and years-of-service requirements.

Bearden offers no coherent alternative construction. Instead, he cites an unhelpful definition contained within a dictionary: "Termination of one's own employment or career, esp. upon reaching a certain age or for health reasons." *Retirement*, *Black's Law Dictionary* (10th ed. 2014). But Delaware courts have explained that the ordinary meaning of a term does not apply when the contract provides a specific definition. *See, e.g.*, *AT&T*, 953 A.2d at 252–53 & n.35; *Citadel*, 603 A.2d at 824. The Award Terms states that "Retirement" is "defined in the applicable pension or retirement plan or . . . company policy." The reference in the Award Terms to the Pension Plan for the definition makes clear that "retirement" carries a "special meaning" distinct from the ordinary definition. *AT&T*, 953 A.2d at 252. Because the only definitions of "retirement" exist within Part IV of the Pension Plan, these definitions are the only way to give effect to the language referencing the Pension Plan. *See Salamone*, 106 A.3d at 368. And Bearden admits that his proposed definition would allow for irrational results. *See* Oral Argument at 1:10–1:25 (Dec. 5, 2019) (Bearden's attorney agreeing that an employee who exits the workforce after one week of employment with DuPont would be considered retired under Bearden's definition); *id.* 7:19–7:52 (Bearden's attorney agreeing that the ordinary definition "means just leaving the company," so "it could . . . absolutely" include a twenty-six-year-old). "Even the literal meaning of a contract must be rejected if it 'would be clearly unreasonable and yield an

12

arbitrary result.'" *Koch Bus. Holdings, LLC v. Amoco Pipeline Holding Co.*, 554 F.3d 1334, 1338 (11th Cir. 2009) (quoting *Citadel*, 603 A.2d at 822); *see also id.* ("[A] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." (quoting *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002))).

The only reasonable construction is that "retirement" in the Award Terms is defined by reference to Section IV of the Pension Plan, which requires employees to reach a certain age *and* be employed a certain number of years to "retire." Bearden's 10 years of service with DuPont falls short of the years-of-service requirements within Section IV. And we need not reach the question whether the district court erred by admitting and relying on the Dineen declaration.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of DuPont.

13