■ CHOCK 336 B'WAY OPERATING, INC., Respondent-Appellant, v COMANCHE PROPERTIES, INC., et al., Appellants-Respondents and Third-Party Plaintiffs-Appellants. SUNNY CHANG et al., Third-Party Defendants-Respondents, et al., Third-Party Defendants.—Order, Supreme Court, New York County (Leonard Cohen, J.), entered April 7, 1989, which directed defendants to deposit the sum of $1,000,000 into escrow with their attorney, directed the escrow agent to pay the sum of $798,102.26 to certain third-party defendants and which directed plaintiff to pay third-party defendants cancellation fees on subleases, unanimously modified to the extent appealed from, on the law and on the facts, to vacate that portion of the order which directed plaintiff to pay cancellation fees and defendants to establish an escrow fund to be used for payment of these fees, and otherwise affirmed, without costs. Appeal from an order of the same court, entered November 9, 1989, which, *inter alia,* adhered to the order entered April 7, 1989, dismissed as academic, without costs.

On July 29, 1983, defendant Comanche Properties, Inc. (Comanche) leased premises consisting of a series of retail stores located at 336-44 Broadway, to plaintiff Chock 336 B'way Operating, Inc. In paragraph 28A of this lease, Comanche reserved the right to cancel the lease should it decide to demolish the building. This provision of the lease also authorized the payment by Comanche of a cancellation fee to plaintiff in the event the lease was terminated. If the lease was canceled and plaintiff vacated the premises on or before the cancellation date as defined in the lease, plaintiff was to receive "(A) the lesser amount of (X) tenant's net profits * * * and (Y) one million ($1,000,000) Dollars; plus (B) * * * the then unamortized portion of such work, material, machinery or equipment."

Paragraph 28 of the lease further required Comanche to deposit with its attorney, as escrow agent, the maximum amount which might be payable as a cancellation fee, $1,000,000 plus the claimed unamortized expenses before the amount of the cancellation fee was finally determined. This amount, which was to be held in escrow, was to be applied toward Comanche's obligation to pay the cancellation fee. Paragraph 28A (d) (B) of the lease also required plaintiff to include in any sublease into which it entered an acknowledgment by its prospective subtenants of the cancellation contingency. The subtenants were required to vacate the premises on or before the cancellation date in the event the landlord canceled the lease.

Plaintiff thereafter entered into various subleases with the third-party defendants for portions of the premises. The subleases contained the cancellation provision as required by the main lease and also contained a separate provision permitting plaintiff to terminate the subleases under certain defined contingencies, including the cancellation of the main lease.

Pursuant to paragraph 28A of the lease, defendant Broadworth, the successor to Comanche and Chock Full O'Nuts Corp. to the premises, sent plaintiff a notice of cancellation of the lease on March 18, 1988 and set September 20, 1988 as the cancellation date. Plaintiff then obtained a temporary restraining order tolling the cancellation notice and enjoining the termination of the lease pending its motion for a preliminary injunction. The court order also tolled the service on the subtenants of notices of cancellation of their subleases. On May 18, 1988, the Supreme Court vacated the temporary restraining order insofar as it placed any restriction on defendants' ability to terminate the lease, denied plaintiff's motion to enjoin defendants from canceling the lease and directed plaintiff to comply with the cancelation notice.

In accordance with the terms of the lease, Broadworth placed $2,305,199, the maximum amount plaintiff could claim as a cancellation fee, in escrow. Plaintiff thereafter reduced its cancellation fee claim to $2,178,642. Plaintiff commenced the underlying action for a declaration that it was entitled to exercise a right of first refusal under the lease and a third-party action against the subtenants for a declaration that their subleases were terminated effective November 28, 1988. Some of the subtenants (the Chang subtenants) moved for summary judgment to declare the subleases terminated, to direct the establishment of a $1,000,000 escrow fund and for a determination of liability for cancellation payments due them.

The Supreme Court held that once the main lease terminated, the subleases no longer had any force or effect and that it was plaintiff's obligation to pay cancellation or termination fees to the subtenants. The court also directed defendants to deposit $1,000,000 in escrow out of which the cancellation fees were to be paid to the subtenants.

We agree with plaintiff that the clear and unambiguous language of the lease and subleases establishes that it was not obligated to pay any cancellation fees to the subtenants. Therefore, it was also error to direct defendants to establish an escrow fund from which the subtenants would be paid the cancellation fees.

Section 56A of the subleases provides that if one of the five enumerated contingencies occurs, including the cancellation of the lease by defendants, plaintiff would have the option of canceling the subleases on at least 60 days' written notice. The subleases further provided that if plaintiff exercised its option under section 56A, the subtenants would be entitled to a cancellation payment. Since plaintiff never exercised its option to cancel the subleases by serving written notice, the subtenants were not entitled to the cancellation fees.

Section 76 of the subleases contains the language required by the main lease, to the effect that the subtenants acknowledge the possibility of the cancellation of the lease. The section does not provide for the payment by plaintiff of a cancellation fee to the subtenants should such event occur. The subleases also provide that if they are canceled under any provision of the subleases other than section 56, the terms of such other provision shall govern.

Under the subleases, plaintiff had two options when defendants exercised their right to cancel the main lease pursuant to paragraph 28A. If plaintiff decided that it would be more advantageous to have the subtenants vacate quickly, it could exercise its option under section 56A of the subleases and force the subtenants to vacate after 60 days with plaintiff compensating them with a cancellation fee. If, on the other hand, plaintiff elected to terminate the subleases pursuant to section 76, the subtenants could remain in occupancy until the "Cancellation Date" specified in paragraph 28A (a) of the main lease, 180 days after Broadworth served it cancellation notice on plaintiff. If plaintiff was willing to wait for 180 days for the subtenants to vacate, it would not have to pay the cancellation fee. The subtenants would be afforded additional time to wind up their affairs and relocate if plaintiff elected to proceed under section 76.

Although the subtenants maintain that a literal interpretation of the language of the subleases works a hardship on them, it is well settled that a contract should be construed to give force and effect to its provisions *(Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42; *Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp.,* 106 AD2d 242, *affd* 66 NY2d 779), and that "[t]he court should not make an artificial interpretation of the contract merely because one of the parties has made an improvident bargain (see *Leibowitz v County Trust Co.,* 19 AD2d 843)." *(Aloi v Board of Educ.,* 81 AD2d 874, 876.)

We have considered the parties' remaining contentions and find them to be without merit. Concur—Kupferman, J. P., Ross, Rosenberger, Kassal and Smith, JJ.