[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 27, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10636

_____

D. C. Docket No. 04-00204-CV-ORL-31-DAB

MAXCESS, INC.,

Plaintiff-Appellant,

versus

LUCENT TECHNOLOGIES, INC.,

Defendant-Appellant,

COPPER MOUNTAIN NETWORKS, INC.,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 27, 2005)

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Maxcess, Inc. ("Maxcess") appeals the district court's dismissal of its lawsuit against Defendants Lucent Technologies, Inc. ("Lucent") and Copper Mountain Networks, Inc. ("Copper Mountain"). After review and oral argument, we affirm.

## I. BACKGROUND

In 1998, Maxcess was formed for the purpose of providing local and long-distance telecommunications services via voice over internet. That same year, Lucent and Cooper Mountain developed PathStar, which according to Lucent was "a revolutionary new class of product designed specifically to enable network operators to offer low-cost, reliable local and long-distance voice and data services over IP networks including the Internet."

In 1999, Lucent and Maxcess entered into negotiations regarding PathStar. In February 2000, Lucent and Maxcess entered into a Purchase Agreement for the sale of multiple PathStar systems, certain software licenses, and installation and technical-support services. The Purchase Agreement provided, in part, that Maxcess "SHALL GIVE LUCENT PROMPT WRITTEN NOTICE OF ANY CLAIM. ANY ACTION OR PROCEEDING AGAINST LUCENT MUST BE BROUGHT WITHIN TWENTY-FOUR (24) MONTHS AFTER THE CAUSE OF ACTION ACCRUES."

As things turned out, the only "revolutionary" aspect of PathStar was its colossal failure. For example, Lucent claimed that the PathStar system could handle 7,000 simultaneous calls. However, in reality, the system could handle only 131 to 336 simultaneous calls.

In early 2001, Lucent informed Maxcess that it was discontinuing the PathStar system and would no longer provide Maxcess with support services. In early May 2001, Maxcess ceased doing business and terminated all its employees.

On February 19, 2004, Maxcess filed suit in the Middle District of Florida.[1] According to Maxcess's Second Amended Complaint, Lucent engaged in: (1) fraudulent or intentional misrepresentation; (2) negligent misrepresentation; (3) false advertising; (4) fraudulent concealment; (5) fraudulent inducement; (6) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (7) a conspiracy to defraud; (8) a conspiracy to commit fraudulent inducement; and (9) a conspiracy to commit a violation of FDUTPA. As noted by the district court, Maxcess does not "deny that more than two years have passed since its claims accrued." Dist. Ct. Opn. at 18.

The district court dismissed Maxcess's complaint with prejudice because it was (1) filed after the 24-month limitation period contained in the Purchase

---

[1]The Purchase Agreement contained a choice of venue and jurisdiction clause designating "the federal court, located in or near Orlando, Florida" as the proper venue.

Agreement, and (2) barred by Florida's economic-loss rule.

Maxcess appeals.

## II. DISCUSSION

On appeal, Maxcess argues that the district court erroneously: (1) determined that Florida's economic loss doctrine barred Maxcess' fraud claims;[2] (2) concluded that, in any event, all of Maxcess' claims were barred by the limitations period contained in the Purchase Agreement; and (3) considered the Purchase Agreement when considering Lucent's motion to dismiss.[3] For the following reasons, we conclude that the district court properly granted Lucent's motion to dismiss.

In this case, the Purchase Agreement between Lucent and Maxcess clearly provides for a two-year limitations period in which Maxcess must bring any and all actions. It is undisputed that all of Maxcess's claims accrued no later than May

---

[2]Because we conclude that the district court properly dismissed Maxcess's complaint pursuant to the limitations period contained in the Purchase Agreement, we do not reach the issue of Florida's economic loss rule.

[3]Maxcess argues that the district court was barred from considering the Purchase Agreement when considering Lucent's motion to dismiss because it was not mentioned in, nor attached to, its complaint. However, a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity. Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002). Neither party disputes the authenticity of the Purchase Agreement between Lucent and Maxcess. Furthermore, contracts such as the one in this case are central to a plaintiff's claim. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). As such, the district court properly considered the Purchase Agreement when ruling on Lucent's 12(b)(6) motion to dismiss.

2001, and that more than two years passed before Maxcess filed its complaint in federal court. Thus, if the two-year limitations period in the contract is enforceable, Maxcess's federal complaint is untimely and the district court properly dismissed the complaint.

The Purchase Agreement between Lucent and Maxcess contained a choice of law provision designating that the Purchase Agreement would be governed by New York law. Specifically, the Purchase Agreement stated that "[t]he construction and interpretation of, and the rights and obligations of the parties pursuant to this Agreement, shall be governed by the laws of the State of New York."

In New York, "[p]arties to a contract may agree to limit the period of time within which an action must be commenced to a shorter period than that provided by the applicable Statute of Limitations." Incorporated Village of Saltaire v. Zagata, 280 A.D.2d 547, 547 (N.Y. App. Div. 2001); see also Certified Fence Corp. v. Felix Indus., Inc., 260 A.D.2d 338, 339 (N.Y. App. Div. 1999); Kozemko v. Griffith Oil Co., 256 A.D.2d 1199, 1200 (N.Y. App. Div. 1998).

Maxcess stresses that this Court should refuse to apply this axiom of New York law because Florida law does not permit contracting parties to shorten the limitations period. See Fla. Stat. § 95.03 ("Any provision in a contract fixing the

period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void."). However, under Florida law, courts will enforce "choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." Mazzoni Farms, Inc. v. E.I. Dupont De Nemours & Co., 761 So.2d 306, 311 (Fla. 2000) (citations omitted); see Burroughs Corp. v. Suntogs of Miami, Inc., 472 So.2d 1166, 1167-69 (Fla. 1985).

In Burroughs, the Florida Supreme Court determined that a "contractual provision shortening the period of time for filing a suit was not contrary to a strong public policy." 472 So.2d at 1169; see Mazzoni Farms, 761 So.2d at 313 (addressing an agreement that released the defendant from all claims, including fraud claims, and stating that "[w]hile we both recognize and reaffirm Florida's policy disfavoring fraudulent conduct, we are mindful of the rigorous standard employed in determining whether to invalidate choice-of-law provisions. Accordingly, we hold that enforcement of the choice-of-law provision is not so obnoxious to Florida public policy as to render it unenforceable."). Because the two-year limitations period in the Purchase Agreement between Lucent and Maxcess does not violate strong public policy in Florida and is perfectly legitimate and enforceable under New York law, Maxcess was required to file any action

6

within two years. See John J. Kassner & Co. v. City of N.Y., 389 N.E.2d 99, 103 (N.Y. 1979) ("The parties may cut back on the Statute of Limitations by agreeing that any suit must be commenced within a shorter period than is prescribed by law. Such an agreement does not conflict with public policy but, in fact, more effectively secures the end sought to be attained by the statute of limitations.") (internal citations omitted). Because Maxcess failed to do so, its lawsuit was untimely, and the district court correctly dismissed the suit with prejudice.

In an attempt to persuade this Court to the contrary, Maxcess argues: (1) the shortened contractual limitations period "is unenforceable because the entire [Purchase] Agreement was fraudulently induced"; (2) the shortened contractual period "must be understood to apply only to claims arising out of this contract or the use or performance of any product, licensed materials or services, and not to the pre-contractual fraudulent inducement claims"; and (3) the choice-of-law provision "does not apply to Maxcess's claims."

With regard to Maxcess's claim that the shortened contractual limitations period is unenforceable, we recognize that Maxcess argues that if the Purchase Agreement was fraudulently induced and, thus, void, then there is no contractual statute of limitations to be enforced. According to Maxcess, its fraud claims cannot be barred by a contract that is void. However, we reject this argument.

7

New York law provides that the shortened limitations period in a contract is enforceable "absent a showing of fraud, duress or misrepresentation" with respect to the actual shortened limitations period. See Kozemko, 256 A.D.2d at 1200 (determining that a shortened contractual limitations period "was not unreasonable and that plaintiffs have failed to demonstrate any fraud, duress or misrepresentation regarding the agreement to shorten the period of limitations")[4]; see also Zagata, 280 A.D.2d at 548 ("Where the party against which an abbreviated Statute of Limitations is sought to be enforced does not demonstrate duress, fraud or misrepresentation in regard to its agreement to the shortened period, it is assumed that the term was voluntarily agreed to.") (citations omitted); Snyder v. Gallangher Truck Ctr., Inc., 89 A.D.2d 705, 706 (N.Y. App. Div. 1982) ("Plaintiff has demonstrated no duress, fraud or misrepresentation in regard to his agreement to the shortened period and it must, therefore, be assumed that the term was agreed to voluntarily."). However, Maxcess fails to even allege that Lucent engaged in any particular fraud with respect to either the choice-of-law provision or the shortened limitations period. Consequently, its claim that the shortened

---

[4]In Kozemko, the plaintiffs sued an oil company based on the oil company's conduct in delivering petroleum to allegedly leaky tanks at a gas station and against the gas station based upon its conduct in discharging petroleum products from allegedly leaky underground storage tanks. See Kozemko, 256 A.D.2d at 1200. The New York Court determined that the plaintiffs' complaints were untimely based on the shortened contractual limitations period. Id.

8

contractual limitations period is unenforceable due to Lucent's alleged pre-

contractual fraud is without merit.[5]

As for Maxcess's argument that the shortened contractual period does not

apply to its "pre-contractual fraudulent inducement claims," the Purchase

Agreement clearly states that "ANY ACTION OR PROCEEDING AGAINST

LUCENT MUST BE BROUGHT WITHIN TWENTY-FOUR (24) MONTHS

AFTER THE CAUSE OF ACTION ACCRUES." (Emphasis added).

In New York, "a written agreement that is complete, clear and unambiguous

on its face must be enforced according to the plain meaning of its terms."

Greenfield v. Phillies Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). "A contract

is unambiguous if the language it uses has a definite and precise meaning,

unattended by danger of misconception in the purport of the [Purchase Agreement]

itself, and concerning which there is no reasonable basis for a difference of

opinion." Id. at 170-71 (internal quotation marks and citation omitted).

Furthermore, "a contract should be construed to give force and effect to its

provisions and [a] court should not make an artificial interpretation of the contract

merely because one of the parties has made an improvident bargain." Chock 366

---

[5]We note that New York treats arbitration provisions in contract much the same way. See Weinrott v. Carp, 32 N.Y.2d 190, 197 (N.Y. 1973) ("the arbitration clause is separable assert that the fraud must go to the arbitration provision itself in order to avoid submission to arbitration") (citations omitted).

B'Way Operating, Inc. v. Comanche Props., Inc., 163 A.D.2d 36, 39 (N.Y. App. Div. 1990) (internal quotation marks and citations omitted).

In this case, the Purchase Agreement clearly covers "any action or proceeding," and is not limited to contractual or tort claims. Consequently, we conclude that the shortened limitations period covers both claims arising in contract law and in tort law. See Dahmen v. Gregory, 55 N.Y.S.2d 311, 313 (N.Y. App. Div. 1945) ("The words 'any action or proceeding commenced in any court' are all-embracing and must be taken to include all types of actions and proceedings.").

Finally, Maxcess asserts that the choice-of-law provision does not apply to its fraudulent-inducement or statutory-fraud claims "because by its own terms it only applies to 'the rights and obligations of the parties pursuant to this agreement' [and] not to tort claims based on lies and concealments which occurred before there ever was a [Purchase] Agreement."[6]

However, Maxcess's argument confuses two issues. One issue is whether New York or Florida law would govern the elements of Maxcess's underlying

---

[6]Maxcess fails to quote the entire choice-of-law provision. As stated above, the choice-of-law provision actually states that "[t]he construction and interpretation of, and the rights and obligations of the parties pursuant to this Agreement, shall be governed by the laws of the State of New York." Thus, not only are "the rights and obligations of the parties pursuant to this Agreement" governed by New York law, but so is the entire "construction and interpretation" of the Purchase Agreement.

10

fraud claims. As Lucent admits in its appellate brief, "New York law would not determine whether Maxcess has properly pleaded the necessary elements of its various tort and statutory claims." Thus, Florida law may well govern the elements of Maxcess's tort and statutory claims.

The second issue is whether the two-year limitations period in the Purchase Agreement is enforceable. The two-year limitations period is in the contract and, thus, we look to the choice-of-law provision in the same contract to determine if that contract provision is enforceable. Put another way, the agreement to bring "any action or proceeding" within two years is an obligation pursuant to the Purchase Agreement, making it subject to the choice-of-law provision. The contractual limitations provision has nothing whatsoever to do with the basis of Maxcess's underlying claims or whether they are governed by Florida, New York, or any other law.[7]

We have already concluded that the shortened contractual limitations period

---

[7]In its brief and at oral argument, Maxcess argued that Burroughs supports its position that its fraud claims are not subject to the contractual limitations period. Specifically, Maxcess asserts that even though the Burroughs Court determined that a shortened limitations period was not against public policy in Florida, it did not conclude that the plaintiffs' tort claims were governed by the contractual limitations period. In Burroughs, however, "[t]he sales contract . . . contained a limitation-of-action provision requiring that any action arising from a claim of breach of the contract be brought within two years of the accrual of the cause of action." 472 So.2d at 1167 (emphasis added). Unlike this case, the contractual limitations period in Burroughs specifically limited itself to claims for breach of contract. Thus, in stark contrast to Burroughs, the contractual limitations period here applies to "any action or proceeding against Lucent."

is enforceable and applies to "any action or proceeding" including Maxcess's fraud claims. Thus, it is completely irrelevant to the material issue in this case – whether Maxcess's claims were timely filed – that Maxcess may have tort claims that could be pled under Florida law.[8]

For all the above reasons, we affirm the district court's dismissal of Maxcess's claims.

AFFIRMED.

---

[8]Maxcess relies on two decisions from this Court, Green Leaf Nursery v. E.I. DuPont DeNemours & Co., 341 F.3d 1292 (11th Cir. 2003), and Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 133 F.3d 1405 (11th Cir. 1998), in support of its position. However, these cases do not address a contractual limitations period; rather, they address the separate issue of whether the elements of Maxcess's tort claims would be governed by the forum state's law (i.e., Florida, in Maxcess's case).

For example, the issue in Green Leaf Nursery was whether a choice-of-law provision precluded the plaintiffs from bringing certain tort claims under the forum state's tort law. 341 F.3d at 1300. Specifically, the choice-of-law provision provided that "[t]his release shall be governed and construed in accordance with the laws of the State of Delaware." Id. (ellipsis omitted). This Court concluded that Delaware law would determine the scope and effect of the release, whereas the forum state's choice-of-law rules would govern the tort claims. See id. at 1301 ("Because the choice-of-law provision is narrow and governs only the scope and effect of the release, we turn to the choice-of-law rules of the forum state, Florida, to determine the applicable law governing the Plaintiffs' tort claims.") (citations omitted).

Nowhere in Green Leaf Nursery is there a discussion of how the choice-of-law provision affects internal provisions of the same contract. Put another way, Green Leaf Nursery addresses the question of what type of tort claims may be brought, not when those claims (whatever form they may take) must be brought. Because we have already concluded that Maxcess was required to bring all claims within two years, it does not matter that some of those claims may have been properly pled under Florida law.

12