[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14344

Non-Argument Calendar

_____

RONALD ELLISON,

                                                            Plaintiff-Appellant,

*versus*

GEORGIA DEPARTMENT OF COMMUNITY HEALTH,
COMMISSIONER OF THE GEORGIA DEPARTMENT OF
COMMUNITY HEALTH,
GEORGIA DEPARTMENT OF HUMAN SERVICES,
COMMISSIONER OF GEORGIA DEPARTMENT OF
HUMAN SERVICES,
SOWEGA COUNCIL ON AGING INC, et al.,

2                    Opinion of the Court                    20-14344

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:18-cv-00073-WLS

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Ronald Ellison appeals the district court's dismissal of his section 1983 due process claims against two state commissioners and a non-profit and its employees. We affirm.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ellison is in his mid-sixties and suffers from osteoarthritis and hypertension. Because of these conditions, Ellison qualified for home-delivered health care and meals under Medicaid. The benefits were administered, first, by the Georgia Department of Human Services, and, later, by the Georgia Department of Community Health. The state agencies contracted with private non-profits to provide the benefits. In the area where Ellison lived, the Southwestern Georgia Council on Aging was the designated non-profit. The state agencies required the non-profits to provide the Medicaid services as outlined in two manuals.

In April 2016, a case worker for the non-profit attempted to recertify Ellison so he could continue receiving benefits. The case worker entered Ellison's home without knocking or announcing herself, and, when Ellison "protested her illegal entry," she became "combative and argumentative." Ellison then cautioned her that "it could be extremely dangerous for him, and for her, for her to enter his home without announcing herself and without knocking first." After completing the recertification, Ellison alleged, the case worker falsely told her supervisor that he had threatened her.

Two days later, the supervisor and two others from the non-profit returned to Ellison's home for an "unscheduled case conference." Because they were unexpected, Ellison refused to allow them in. That same day, the supervisor discontinued, and then, three days later, terminated, Ellison's benefits without providing him notice.

As a result of his termination, Ellison sued the two state agencies, their commissioners, the non-profit, and its employees, under 42 U.S.C. section 1983 for violating his constitutional rights. First, he alleged that the defendants, in their official and individual capacities, violated his due process rights by terminating his Medicaid benefits without notice or a pre-deprivation hearing. And second, Ellison alleged that the defendants, in their official and individual capacities, were deliberately indifferent to the violation of his rights by failing to properly train and supervise their subordinates.

Soon after filing his section 1983 complaint, Ellison moved for leave to amend and then did so again a month later. The district court granted his first request and denied his second as untimely. Because the state agencies and commissioners had already moved to dismiss the original complaint, the district court gave them the option of filing a new motion to dismiss or relying on their already-filed motion.

The state agencies and commissioners relied on their already-filed motion, in which they asserted sovereign immunity as to Ellison's official capacity claims and qualified immunity as to his individual capacity claims. The non-profit and its employees also moved to dismiss, arguing that they were not state actors under section 1983.

The district court granted both motions and dismissed the amended complaint. As to the state agencies and commissioners, the district court concluded that Ellison's official capacity claims were barred by sovereign immunity, and, as to the individual capacity claims, the state commissioners were entitled to qualified immunity. As to the non-profit and its employees, the district court concluded that Ellison had failed to allege that they were acting under color of law.

## II.    STANDARD OF REVIEW

We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss. *Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009). And we review

20-14344                Opinion of the Court                5

de novo the district court's dismissal of a complaint for failure to state a claim. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). Pro se pleadings are liberally construed, but issues not briefed on appeal are considered abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## III.    DISCUSSION

Ellison appeals the dismissal of his individual capacity claims against the state commissioners, the non-profit, and its employees. But he does not appeal the dismissal of his official capacity claims or his claims against the state agencies, so they are not at issue in this appeal. *See id.* (holding that issues not briefed on appeal are considered abandoned.).

As to the individual capacity claims against the state commissioners, the non-profit, and its employees, Ellison makes three arguments. First, he asserts that the district court erred in granting the state commissioners' motion to dismiss because the motion was not directed at the amended complaint. Second, Ellison contends that the state commissioners were not entitled to qualified immunity because his "substantive due process right not to have his Medicaid benefits discontinued without notice or opportunity to be heard was clearly established." And third, he argues that the district court erred by concluding that the non-profit and its employees weren't acting under color of state law.

### The State Commissioners' Motion to Dismiss

Ellison argues that the district court should not have considered the state commissioners' motion to dismiss because it was directed at the wrong version of his complaint. But Ellison never made this argument to the district court, so we do not consider it for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt.") (cleaned up).

And even if we did consider it, "district courts have 'unquestionable' authority to control their own dockets," and they have "broad discretion in deciding how to best manage the cases before them." *Smith v. Psych. Solutions, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). Here, the district court gave the state commissioners the option of either submitting an amended motion to dismiss against Ellison's amended complaint or relying on their initial motion to dismiss. We don't see how this time-and-resource-saving case management decision fell outside the district court's broad discretion to manage its docket.

### Qualified Immunity

Next, Ellison argues that the district court erred in concluding that the state commissioners were entitled to qualified immunity.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations and quotations omitted). To overcome the qualified immunity defense, Ellison had to allege that the state commissioners (1) violated a constitutional right, and (2) that the right was clearly established at the time of the alleged violation. *Id.* Additionally, "[s]upervisory officials are not liable under [section] 1983 for the unconstitutional acts of their subordinates unless the supervisor personally participates in the alleged constitutional violation or there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (internal quotations omitted).

Here, Ellison has not alleged that the state commissioners personally participated in violating his constitutional rights. Ellison did not allege that the state commissioners personally played a role in terminating his Medicaid benefits. In his amended complaint, Ellison alleged it was the private actors—the case worker and her supervisor—and not the state commissioners who terminated his benefits without a hearing. Indeed, Ellison alleged that the state commissioners only learned of the termination of his benefits through this lawsuit. They could not have personally participated

in a constitutional violation that they only learned about after the lawsuit was filed.

Without personal participation, Ellison must allege a "causal connection" between the actions of the supervisors and the alleged constitutional violation to hold the supervisors liable under section 1983. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (explaining that "supervisors can be held personally liable [under section 1983] when . . . there is a causal connection between the actions of the supervisor and the alleged constitutional violation"). A causal connection can be established "where a history of widespread abuse puts the supervisor on notice," *id.*, or where an improper custom or policy resulted in deliberate indifference to constitutional rights, *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). To be sufficient to put a supervisor on notice, the constitutional deprivations must "not only be widespread, they also must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (internal citations omitted).

But Ellison has not alleged any other incidents of improper benefits terminations, much less the "flagrant" and "widespread" allegations needed to provide notice. Nor has he alleged that there was a "custom or policy" of ignoring improper benefits terminations. Without these crucial allegations, the state commissioners cannot be held liable as supervisors under section 1983.

*State Actor*

Finally, Ellison argues that the district court erred in concluding that the non-profit and its employees were not acting under color of state law, and, thus, not subject to section 1983 liability.

"Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). These rare circumstances are: (1) where "the State has coerced or at least significantly encouraged the action alleged to violate the Constitution"; (2) where "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise"; and (3) where "the private parties performed a public function that was traditionally the exclusive prerogative of the State." *Id.* Ellison did not plausibly allege any of these three rare circumstances.

First, Ellison has not alleged that the state compelled the non-profit and its employees to terminate his benefits. The Supreme Court has explained that "a State can normally be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be in law deemed to be that of the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "Mere approval of or acquiescence in the initiatives of a private party," the Supreme Court continued, "is not sufficient to justify holding the State responsible[.]" *Id.* Here, Ellison has not alleged that any state actor was involved in the non-profit and its employees' decision to terminate his benefits. His allegation that the state commissioners

failed to intervene in his case isn't enough because mere acquiescence can't show state coercion.

Second, Ellison argues that the state acted as a joint participant with the non-profit and its employees because it contractually-bound them to make decisions consistent with the state-issued manuals. Ellison is right that, if a state contracts with a private party and the contract requires the private party to take particular actions, then by "acting in accordance with the governmental directive[,] the private actor is merely a surrogate for the state, and the tie between them is sufficiently strong" for section 1983 liability. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278–79 (11th Cir. 2003).

But Ellison's case is not like *Focus on the Family*. There, the state contracted with a private entity to sell advertising space on public transportation. *Id.* at 1268. The contract established clear rules for approving ads and the state retained final decisionmaking authority. *Id.* at 1278. Although the interdependence must "involve the specific conduct of which the plaintiff complains," we said that the clear guidelines and direct supervisory control were enough to survive summary judgment. *Id.*

Unlike the plaintiff in *Focus on the Family*, Ellison has not alleged that the state agencies and commissioners had final decisionmaking authority over the decision to terminate benefits. And he has not alleged that the manuals had clear rules and guidelines

20-14344                Opinion of the Court                11

for making the termination decision.[1]  For example, Ellison did not allege that the manuals directed the non-profits to terminate benefits without notice or an opportunity to be heard.  Without any allegations about what the manuals required the non-profits to do, there is no plausible inference that they contractually-bound the non-profit to violate Ellison's constitutional rights.

Third, the provision of social services is not a traditional and exclusive state function.  The Supreme Court has stressed that "very few" functions fall into this category. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019).  In *Manhattan Community*, the Supreme Court emphasized that the "traditional and exclusive" function cannot merely be one that the government has "exercised . . . in the past, or still does." *Id.* at 1928.  And it is not enough that the function serves the public good. *Id.* at 1929.  Rather, it must be "traditionally *and* exclusively" performed by the state. *Id.*  The Court then listed as examples running elections and operating a "company town." *Id.*  But operating nursing homes, providing special education, representing indigent criminal

---

[1] Because we review the district court's dismissal of Ellison's amended complaint under Rule 12(b)(6), we do not consider any allegations outside of the amended complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).  That includes Ellison's proffers about what the state agencies and their commissioners or the non-profit and its employees said or did in Ellison's administrative and state-court proceedings because they are not alleged in the complaint.

defendants, or even supplying electricity were not traditional and exclusive state functions. *Id.*

Neither is providing elder care services—free meals, transportation and cleaning. These are things that have traditionally been done by religious groups, non-profits, and even family members. We don't see a meaningful distinction between providing elder care services through a nursing home, which the Supreme Court has explained is not a traditional state function, *see Blum*, 457 U.S. at 1009, and providing elder care services through a non-profit, especially when the state funds both activities, *id.* at 994–95. And Ellison has not argued that there is a meaningful distinction. Like state-funded nursing homes that care for the elderly, state-funded home-based services for the elderly are not among the "very few" "powers traditionally exclusively reserved to the State." *See Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928–29.

## IV.    CONCLUSION

The district court properly dismissed Ellison's amended complaint because he failed to allege that the state commissioners violated his constitutional rights. And he failed to allege that the non-profit and its employees were acting under color of state law and subject to section 1983.

**AFFIRMED.**