**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-13645

Non-Argument Calendar

————————————

BLAIR CLARK,

*Plaintiff-Appellant,*

*versus*

DAVID BELL,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:25-cv-00444-WFJ-SPF

————————————

Before JILL PRYOR, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Blair Clark sued a police detective for allegedly misleading prosecutors into charging him with grand theft. The District Court dismissed Clark's complaint, finding that the detective had "at least

arguable probable cause" to suspect Clark had committed the crime. Because Clark failed to state a plausible claim for relief, we affirm.

## I.

On February 21, 2025, Clark sued Detective David Bell of the City of Lakeland, Florida Police Department for one count of malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. According to Clark, Detective Bell filed a probable cause affidavit with the State Attorney's Office that contained false, misleading, and incomplete information. Clark alleges the following facts in his complaint.

In early 2022, Alicia Storer reported the theft of certain industrial equipment, which she had been keeping on Clark's property. The equipment included several forklifts, a "goose neck" trailer, a fiberglass utility bed, and a skid steer. The complaint fails to mention why Storer was keeping her equipment on Clark's property, whether Clark agreed to watch over the equipment, or how long it was supposed to remain there. In any event, Storer told Detective Bell that her equipment was now missing, and that it was worth approximately $36,000.

Detective Bell came to learn that Storer's equipment was physically removed from Clark's property by a man named Allan Kitto. Detective Bell interviewed Kitto, who explained that he was hired by Clark to remove the equipment, that he originally quoted Clark $18,000 for the removal, and that he agreed to accept receipt of some of the items in lieu of payment. Kitto then described the

25-13645                    Opinion of the Court                    3

equipment as "junk" and "not worth more than $3,000." As to why Kitto would have agreed to take $3,000 worth of "junk" in lieu of his $18,000 quote, the complaint leaves us without answer.[1]

Kitto also said that Storer told Clark the equipment belonged to someone else. The complaint does not suggest why Storer would mislead Clark as to who owned the equipment or why the equipment's ownership would impact Clark's ability to dispose of it. But, apparently, Detective Bell went back to Storer, who confirmed that she had lied to Clark about someone else owning the equipment, and that it was in fact hers.

When Clark learned of the investigation, he told Detective Bell how to reach his attorney, Nick Troiano. On April 18, 2022, Troiano and Detective Bell spoke on the phone. Troiano said that Clark would give a statement but only with Troiano present. In the ensuing weeks, Troiano tried to schedule that meeting, but Detective Bell never followed up.

On June 13, 2022, Detective Bell filed a probable cause affidavit with the State Attorney's Office.[2] There, Detective Bell wrote

---

[1] This omission is relevant because one of Clark's key allegations is that Detective Bell failed to credit Kitto's $3,000 valuation over Storer's $36,000 valuation.

[2] The probable cause affidavit was attached to a copy of Bell's motion to dismiss. Because the existence of the affidavit and its content are not in dispute, the District Court properly considered the affidavit in its analysis. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered [on a

that "through his investigation," he became aware of the following facts:

- Clark had agreed to keep Storer's equipment on his property while Storer was in the process of moving her business.

- In October 2021, Storer offered to retrieve her items. Clark informed Storer that his "loader" was broken and that he would let her know when it was fixed.

- In November 2021, Clark hired Kitto to remove the equipment and directed him to bring it to a local auction house.

- When Storer learned that her equipment was missing, she confronted Clark, who verbally admitted that he sold the items "to pay bills."

- Storer texted Clark about his earlier admission, and Clark responded: "Oh no I did i [sic] say that whoops I said that I sold your stuff silly me . . ."

- The equipment was worth over $30,000.

- Clark refused to give an interview.

Detective Bell concluded by stating: "Based on the totality of this investigation, the allegation, some of the equipment being recovered, the text messages, the phone call history, [and] the state-

---

motion to dismiss] if it is central to the plaintiff's claims and is undisputed in terms of its authenticity.").

ments by the victim and Kitto[,] . . . I determined that there is sufficient probable cause to complete an affidavit for Grant Theft." A copy of Clark's text message exchange with Storer was appended to Detective Bell's affidavit.

On August 3, 2022, Assistant State Attorney Joseph McCarthy filed a Direct Information for Grand Theft and Dealing in Stolen Property. On August 4, 2022, Clark was arrested, and on August 5, 2022, he posted bond. On March 13, 2024, the State Attorney's Office dismissed the charges.

Clark brought the instant action on February 21, 2025. His complaint alleges that Detective Bell's affidavit contained several material misrepresentations and omissions. Specifically, he alleges that the affidavit: (1) incorrectly stated that Clark refused to give an interview; (2) incorrectly stated that the property was worth over $30,000; and (3) failed to mention that Storer misrepresented the equipment's ownership. Clark also claims that Detective Bell failed to conduct a reasonable investigation into who owned the equipment, the value of the equipment, and the full communications between Clark and Storer.

The District Court dismissed Clark's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), reasoning that "any misstatements or omissions that [Detective Bell] may have made were not sufficiently material to violate the Fourth Amendment." The Court also held that Detective Bell was entitled to qualified immunity. Clark appeals.

## II.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024). We accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* However, we disregard legal assertions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a plaintiff must show a "plausible claim for relief," as opposed to one that is merely "conceivable." *Id.* at 679–80, 129 S. Ct. at 1950–51; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937 at 1940.

## III.

### A. Section 1983 Malicious Prosecution

As a common law tort, malicious prosecution occurs when a person "[1] initiates or procures proceedings [2] without probable cause . . . [3] primarily for a purpose other than that of bringing an offender to justice, and [4] the proceedings have terminated in favor of the accused." Restatement (Second) of Torts § 653 (A.L.I. 1977). It responds to the concern that "a malicious prosecution, like

a defamatory statement, can cause unjustified torment and anguish."[3] *Albright v. Oliver*, 510 U.S. 266, 283, 114 S. Ct. 807, 818 (1994) (Kennedy, J., concurring).

In our Circuit, to demonstrate a claim for § 1983 malicious prosecution, a "plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures *in addition* to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis added). This means that the plaintiff must demonstrate, on top of the four common law elements, "[1] that the legal process justifying his seizure . . . was constitutionally infirm and [2] that his seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).[4] Because we hold that

---

[3] We note that claims of malicious prosecution cannot be brought against prosecutors because a "public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings." Restatement (Second) of Torts § 656; *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) ("[P]rosecutors have absolute immunity for all activities that are intimately associated with the judicial phase of the criminal process." (internal quotation marks omitted)).

[4] As we have explained, however, the analysis can often be simplified:

> In practice . . . a malicious-prosecution claim's common-law elements meld with the Fourth Amendment's textual components because a "significant overlap" exists between them. For instance, "[i]f a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause."

Clark's complaint fails to allege a constitutional infirmity, we do not touch upon the common law elements.

### 1. "Legal Process" Justifying a Seizure

Whether the legal process justifying an individual's seizure is constitutional necessarily turns on substantive Fourth Amendment doctrine. But before we get there, we need to clarify what we mean by "legal process." While this Court has not provided an exhaustive list of legal processes that may give rise to a claim of malicious prosecution, we have recognized that warrants, arraignments, indictments, probable cause hearings, and probation revocations all fall in that category. *Id.* at 1158; *Gervin v. Florence*, 139 F.4th 1236, 1251 (11th Cir. 2025). Relevant here, we have also found that a prosecutor's filing of a Direct Information constitutes a legal process for purposes of malicious prosecution. *Whiting*, 85 F.3d at 585 n.7.

Our focus on legal process has been largely aimed at separating malicious prosecution from the related § 1983 tort of false arrest, which contemplates an arrest *without* legal process. *Williams*, 965 F.3d at 1162; *Butler v. Smith*, 85 F.4th 1102, 1113 (11th Cir. 2023); *Harris v. Hixon*, 102 F.4th 1120, 1133 (11th Cir. 2024). False arrest occurs when an individual is arrested without a warrant and without probable cause. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009). A false arrest ends with the introduction of legal process.

*Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1143–44 (11th Cir. 2020)).

For example, a timely *Gerstein*[5] hearing concludes the tort of false arrest, and, if the judicial officer finds probable cause, the tort of malicious prosecution takes over. *Williams*, 965 F.3d at 1167; *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994) (explaining that a false arrest claim "cover[s] the time of detention up until the issuance of process or arraignment, but not more" (internal quotation marks omitted)).

### 2. Where to Look for Probable Cause

The distinction between arrests pursuant to "legal process" and warrantless arrests matters not only for how we establish the timing of a cognizable claim under each respective tort (i.e., false arrest vs. malicious prosecution) but also for how we conduct our constitutional analysis and where we look for probable cause. We analyze false arrest claims as we would analyze any other warrantless arrest, asking whether the arresting officer had probable cause to suspect the detainee had committed a crime. *Case*, 555 F.3d at 1327; *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964). Anything the officer was able to observe is relevant to our analysis, regardless of whether it ends up in a charging document. If the officer had probable cause to believe that an individual "ha[d] committed

---

[5] In *Gerstein v. Pugh*, the Supreme Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975).

even a very minor criminal offense," the arrest was justified. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001); *see Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

By contrast, "the lawfulness of seizures pursuant to legal process," as in malicious prosecution, *"turns on the validity of the legal process itself."* *Williams*, 965 F.3d at 1162 (emphasis added). For example, when an arrest warrant is issued by a neutral magistrate, a plaintiff must show that the legal process—the granting of the arrest warrant—is itself invalid. And we must treat that judicial determination of probable cause with "great deference." *Spinelli v. United State*s, 393 U.S. 410, 419, 89 S. Ct. 584, 591 (1969); *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) ("A grudging or negative attitude by reviewing courts towards warrants . . . is inconsistent with the Fourth Amendment[.]" (internal quotation marks omitted)); *United States v. Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 3416 (1984) ("[T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." (quoting *Spinelli*, 393 U.S. at 419, 89 S. Ct. at 591)). Unlike with warrantless arrests, the "universe of information" we use to decide the validity of a warrant-based arrest is limited to the information actually presented to the judicial officer. *Butler*, 85 F.4th at 1113; *Whiteley*, 401 U.S. at 564, 91 S. Ct. at 1035.

We have summarized it like this: "warrantless arrests concern whether the facts known to the arresting officer establish probable cause, while seizures pursuant to legal process concern whether the judicial officer who approved the seizure had sufficient

information to find probable cause." *Williams*, 965 F.3d at 1162–63 (11th Cir. 2020).

### B. Clark's Complaint is Deficient

Having explained that malicious prosecution requires a plaintiff to demonstrate that the legal process justifying his seizure was invalid, we would normally turn to evaluating the plaintiff's legal process. The problem? Clark's complaint never tells us what legal process triggered (or extended) his detention. Here is all we know:

1. On June 13, 2022, Detective Bell filed his affidavit with the State Attorney's Office.

2. On August 3, 2022, Assistant State Attorney Joseph McCarthy filed a Direct Information charging Clark with grand theft.

3. On August 4, 2022, Clark was arrested.

4. On August 5, 2022, Clark was released on bond.

That's it. The complaint never explains whether an arrest warrant was issued, who the arresting officer was, whether McCarthy conducted his own investigation before bringing charges, whether Clark received a probable cause determination by a magistrate, or whether Clark was subject to any conditions on release. It appears as though Clark seeks to have us to evaluate Detective Bell's probable cause affidavit, which was sent to the State Attorney's Office two months before charges were filed, as the sole instigating force behind his detention.

This makes Clark's complaint deficient for at least two reasons, among others. First, it leaves us without the ability to determine, even under a "plausibility" standard, *see Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937 at 1940, whether Clark's legal process was constitutionally infirm. Second, we cannot properly evaluate the causal connection between the affidavit and Clark's seizure pursuant to legal process.

### 1. Clark Does Not Properly Challenge Any Legal Process

To plead a § 1983 malicious prosecution claim for relief, Clark needed to identify a legal process that was invalid or constitutionally infirm. *Williams*, 965 F.3d at 1162, 1165. Clark's complaint, however, describes only one "process" with any detail: Detective Bell's filing of an affidavit with the State Attorney's Office. That affidavit, which the complaint does not allege to have been presented to any magistrate, neither comprised nor began any legal process, as such term is understood by this Court. *See id.* at 1158.

To be sure, Clark's complaint also mentions that Assistant State Attorney McCarthy initiated charges against Clark by way of Direct Information, and that Clark was arrested the following day.[6]

---

[6] We note that, in Florida, one type of arrest warrant is automatically issued by the clerk of court when a prosecutor files a Direct Information. Fla. Stat. § 932.48 ("Upon the filing of an information, the clerk of the circuit court *shall* . . . without leave or order of the court first being had and obtained, issue a capias for the arrest of the person charged." (emphasis added)). This arrest warrant, or "capias," is a ministerial act which may not be subject to our ordinary deferential review for an arrest warrant issued by a neutral magistrate after a probable cause determination. Our caselaw does not appear to address

And this Court has explained that "[a]n arrest following the issuance of an information is an arrest as part of a prosecution." *Whiting*, 85 F.3d at 585 n.7. But, aside from one conclusory statement that "[t]here was no probable cause for the original proceeding," Clark makes no plausible allegation that would allow us to infer the charging document was infirm or that it was brought without probable cause. In fact, we are told absolutely nothing about the Direct Information except for the date on which it was filed.

The Florida Constitution requires prosecutors to file charging documents under oath. Fla. Const. art. I, § 15. Further, the Florida Rules of Criminal Procedure require prosecutors, when filing a Direct Information, to certify "his or her good faith in instituting the prosecution . . . and that he or she has received testimony under oath from the material witness or witnesses for the offense." Fla. R. Crim P. 3.140(g). Because Clark was arrested or "seized" only after the Direct Information was filed, and because Assistant State Attorney McCarthy was obligated to verify Detective Bell's information through some investigation of his own, Clark needed to show more than a faulty detective's affidavit to prove his Fourth Amendment rights were violated.

how to review Fourth Amendment malicious prosecution claims where a plaintiff's seizure was triggered by a Direct Information or ministerial capias rather than a formal, magistrate-issued arrest warrant. But, because we do not know for sure that this process is what led to Clark's arrest, that is a question for another day.

### 2. Clark Does Not Properly Allege Causation

Causation provides an another reason that Clark's complaint is deficient. Section 1983, under which Clark brings his claim, creates a private right of action against anyone who, under color of law, "*subjects, or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983 (emphasis added). "The language italicized above 'plainly requires proof of an affirmative causal connection' between the actions taken by the defendant 'and the constitutional deprivation.'" *Harris*, 102 F.4th at 1138 (Tjoflat, J., concurring) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982)).

In the context of an arrest warrant filed by a defendant-officer, our Court has explained that the causal connection is fairly simple to identify. Because the Fourth Amendment violation is focused on an individual's seizure rather than his entire prosecution, the causation inquiry typically "turns on whether [an] officer[] intentionally provided materially false statements to support the arrest warrant." *Williams*, 965 F.3d at 1167. If so, the individual's ensuing arrest is the "natural consequence[]" of the officer's actions. *Id.* (internal quotation marks omitted).

Here, the causal story is more complicated. Detective Bell did not apply for an arrest warrant. Again, he only filed his affidavit with the State Attorney's Office. It was not until two months later that prosecutors filed charges and Clark was arrested. We have held in similar contexts that "intervening acts of [a] prosecutor,

grand jury, judge and jury . . . each break the chain of causation unless [a] plaintiff can show that these intervening acts were the result of deception or undue pressure" by a defending officer. *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989). While it is possible that a probable cause affidavit could deceive a prosecutor, or that an officer could exert undue influence on the decision to bring charges, Clark's complaint contains no plausible allegation to that effect.

## IV.

Because Clark's complaint is insufficient, we agree with the District Court that it failed to state a claim upon which relief can be granted.

For the foregoing reasons, we **AFFIRM**.